**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CHARLES E. THORNTON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LATOYA HUGHES and JANE DOE NURSE PRACTITIONER,**<br><br>**Defendants.** | **Case No. 26-cv-886-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Charles E. Thornton, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Thornton alleges that Jane Doe Nurse Practitioner acted with deliberate indifference when she discontinued his pain medication.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**The Complaint**

Thornton suffers from a pre-existing injury resulting from a gunshot wound to the mouth that left bullet fragments an inch or two from Thornton's spinal cord (Doc. 1, pp. 6, 10). As a result of the injury, Thornton suffers from extreme nerve pain making it difficult to squat, bend over, kneel, walk, or get out of bed without medication (*Id*. at pp. 7, 11). The pain was previously controlled by a prescription for Neurontin, 1200 mg (*Id*. at pp. 7, 10). The medication was initially prescribed by doctors directly after he received his injuries in 2009, and he continued to receive the medication while in jail and in prison (*Id*. at p. 10).

On September 5, 2025, Jane Doe Nurse Practitioner at Menard discontinued Thornton's prescription for Neurontin, both his morning and evening doses (Doc. 1, pp. 7-8). She failed to provide a replacement medication for his pain (*Id*. at p. 11). As a result, Thornton alleges that he suffers with pain in his neck 24 hours a day and he has difficulty walking and getting out of bed (*Id*. at pp. 7-8). He can barely write due to pain that travels from his neck down his right arm (*Id*.). He suffers from weakness and numbness in his right arm and fingers (*Id*.). He also has trouble performing daily functions such as cleaning his cell and washing his body (*id*. at p. 8).

Thornton alleges the nurse practitioner discontinued the medication in retaliation for Thornton filing grievances about the previous discontinuation of his medication (Doc. 1, pp. 7, 12).

## Preliminary Dismissal

Although Thornton identifies IDOC Director Latoya Hughes as a defendant in the case caption, he fails to include any allegations against her in his statement of the claim. He merely notes that she is the director and sued in her official capacity. But Hughes cannot be liable simply in her position as director because there is no *respondeat superior* (or supervisory) liability under Section 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017) ("Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates."). To the extent Thornton sues Hughes in her official capacity and seeks monetary damages from her (Doc. 1, p. 9), "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Thus, any claim against Latoya Hughes is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment deliberate indifference to medical needs claim against Jane Doe Nurse Practitioner for discontinuing Thornton's prescription for Neurontin.**

**Count 2:** **First Amendment retaliation claim against Jane Doe Nurse Practitioner for discontinuing Thornton's prescription in retaliation to Thornton filing grievances.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is**

**mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

At this stage, Thornton alleges a viable deliberate indifference claim against the Jane Doe Nurse Practitioner. He alleges that she discontinued his pain medication without a basis for stopping the medication and without offering an alternative for his pain. Thus, Count 1 shall proceed against Jane Doe Nurse Practitioner.

But Thornton fails to allege a viable retaliation claim against Jane Doe Nurse Practitioner. In order to state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014). "The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). Thornton merely alleges in conclusory fashion that Jane Doe Nurse Practitioner sought to retaliate against him when she discontinued his medication. Although Thornton alleges that he previously wrote grievances about prior instances where his medication was denied, he fails to allege that those grievances were the motivating factor for the discontinuation of his medication or even that the nurse practitioner was aware of the grievances. There are no allegations to suggest when he

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

wrote the early grievances, whether the grievances were about the nurse practitioner and, if they were, whether she was aware of the grievances, and whether she acted in response to the grievances. His conclusory statements are not enough to state a retaliation claim. Thus, Count 2 is **DISMISSED without prejudice**.

To aid Thornton in identifying the Jane Doe Nurse Practitioner, the Court **ADDS** the current warden of Menard, Matthew Plummer, in his official capacity to respond to discovery aimed at identifying the unknown nurse practitioner.

**Motion for Preliminary Injunction**

Thornton recently filed a motion for expediting a preliminary injunction hearing (Doc. 5). He alleges that he continues to suffer from non-stop nerve pain due to his lack of access to Neurontin (*Id*. at p. 2). He describes the pain as bolts of electricity running up and down his spine (*Id*.). He also suffers from mobility issues and numbness in his right arm (*Id*.). He alleges that his pain is chronic and he needs proper medication to control his pain (*Id*. at p. 3). Thornton has been without his Neurontin since September 2025 and his condition continues to deteriorate without access to his medication (*Id*. at p. 6). Thornton seeks an examination and medical plan from a qualified specialist (*Id*. at p. 8). He also seeks a single-man cell because his cellmates bully him (*Id*. at p. 7). He believes that Defendants placed him in double-man cells in an act of retaliation for his complaints against medical care and in an attempt to bully and scare him (*Id*. at pp. 6-7).

To the extent Thornton seeks a single-man cell, his request for injunctive relief is **DENIED**. Thornton argues that he was placed in a double-man cell in retaliation for his grievances, but he has not demonstrated a likelihood of success on the merits as to this

claim. His retaliation claim was dismissed for failure to state a claim, and his Complaint lacks any allegations regarding his placement in a double-man cell or threats to his safety.

As to Thornton's request for injunctive relief regarding his access to Neurontin, the Court **ADDS** Warden Matthew Plummer (in his official capacity only), to respond to the request and implement any injunctive relief that may be awarded. Although Thornton asks for expedited review, the Court notes that Thornton has been without his prescription for almost 11 months and it is not entirely clear how his condition has changed in that time. Thornton merely states that his condition is deteriorating every day. At this time, the Court **DEFERS** ruling on the motion for preliminary injunction and **DIRECTS** Plummer to file a response within **14 days** of service of the pleadings in this case. After Plummer has filed his response, the Court will determine whether an expedited hearing is warranted.

## Disposition

For the reasons stated above, Count 1 shall proceed against Jane Doe Nurse Practitioner. Warden Matthew Plummer is **ADDED** to the case, in his official capacity only, for purposes of responding to discovery regarding the identity of the Jane Doe and responding to Thornton's motion for preliminary injunction.

The Clerk of Court shall prepare for Matthew Plummer (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Thornton. If defendant fails to sign and return the Waiver

of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If defendant can no longer be found at the work address provided by Thornton, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

Because Thornton's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Thornton, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Thornton is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the

Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 4, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**