**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CHARLES THORNTON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JANE DOE NURSE PRACTITIONER and MATTHEW PLUMMER (official capacity only),**<br><br>**Defendants.** | **Case No. 26-cv-886-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Charles E. Thornton, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is currently before the Court on Thornton's motion for expedited preliminary injunction hearing (Doc. 5).[1] Warden Matthew Plummer filed a response (Doc. 28) in opposition to the motion. The Court directed Plummer to file an updated response regarding Thornton's current medical care (Doc. 29). Plummer has now filed that response (Doc. 36). Based on the pleadings, the Court finds that a hearing is not warranted, and, for the reasons set forth below, denies Thornton's request for hearing.

[1] Thornton later filed a supporting affidavit (Doc. 8).

## BACKGROUND

Prior to his incarceration, Thornton suffered a gunshot wound to his mouth that resulted in bullet fragments resting near his spinal cord (Doc. 1; Doc. 19, p. 2). As a result of the injury, Thornton suffers from extreme nerve pain. His pain has been well controlled by Neurontin that he has received since his injury (Doc. 19, p. 2). But in September 2025, Jane Doe Nurse Practitioner at Menard Correctional Center discontinued Thornton's prescription and failed to provide a replacement medication for the pain (*Id.*). As a result, Thornton has been without his medication for a year and suffers from neck pain and difficulty walking (*Id.*).

After a review of his Complaint pursuant to 28 U.S.C. § 1915A, Thornton was allowed to proceed on the following count:

> Count 1: Eighth Amendment deliberate indifference to medical needs claim against Jane Doe Nurse Practitioner for discontinuing Thornton's prescription for Neurontin.

(Doc. 19, p. 3).

After filing his Complaint, Thornton filed a motion requesting an expedited hearing for a preliminary injunction (Doc. 5) which was construed as a motion for injunctive relief. His motion indicated that without access to his Neurontin, he continues to suffer from mobility issues and numbness in his right arm (Doc. 19, p. 5). He alleged that his condition had continued to deteriorate in the months after his prescription was terminated (*Id.*). He requested an examination and medical plan by a qualified specialist (*Id.*).

In light of the seriousness of Thornton's allegations, the Court added Warden Matthew Plummer (in his official capacity only) to both respond to Thornton's request and implement any injunctive relief that might be awarded (Doc. 19, p. 6). In response to the

motion, Plummer acknowledged that Thornton's prescription for Neurontin ended on September 5, 2025 (Doc. 28-1, p. 34). On April 22, 2026, Dr. Devenney conducted a medical examination of Thornton and noted his spinal issues from the gunshot wound (*Id.* at pp. 3-4). Dr. Devenney ordered physical therapy and prescribed Motrin for six months (*Id.* at pp. 4, 43-44). On May 12, 2026, Thornton had an x-ray of his spine which showed mild degenerative in C3-C4, C4-C5, and C5-C6 (*Id.* at pp. 13, 20). The x-ray noted metallic densities adjacent to C5 suggestive of bullet fragments (*Id.* at p. 20). The following day, a CT scan was ordered for his neck (*Id.* at p. 19).

On May 20, 2026, Thornton attended a physical therapy evaluation (Doc. 28-1, p. 15). Thornton noted that his pain was constant and felt like needles poking him; he also complained of numbness. He rated his pain as 10 out of 10 (*Id.*). Although the therapist did not observe any outward signs of severe pain, Thornton continued to complain of a high pain level, and the therapist found that the pain level was outside the scope of care for physical therapy (*Id.*). He was referred back to the doctor for further assessment (*Id.*). On June 17, 2026, Thornton was seen by the nurse for neck pain and was referred to the doctor for evaluation regarding the need for Neurontin (*Id.* at p. 17). The records did not indicate that he had been seen by the doctor in June for his neck pain, although he was seen on June 23 for an unrelated injury (*Id.* at p. 18). Thornton had sutured his own lip with thread from a bed sheet (*Id.*). Plummer noted in his response that Thornton was scheduled to be seen by a medical doctor on October 7, 2026 (Doc. 28, p. 3).

In light of the scheduled appointment, the Court ordered Plummer to update his response after Thornton's scheduled appointment with the doctor (Doc. 29). Plummer also

was directed to provide an explanation for the gap in the medical records from when Plummer was referred to the doctor in June and the October appointment.

In the supplemental response, Plummer indicated that on October 7, 2026, Thornton saw a physician assistant about his neck pain (Doc. 36). Plummer also offered the affidavit of Healthcare Unit Administrator Connie Dolce who was familiar with the medical files and had reviewed Thornton's medical records (Doc. 36-2). Dolce noted that Thornton was seen for his neck pain on June 7, 2026, and he was referred to the medical doctor to evaluate his condition (Doc. 36-2, p. 2). Dolce noted that he may have been placed on the doctor call line but then was seen by the doctor for an unrelated issue regarding his lip on June 23, 2026 (*Id.*). The medical records from June 23 do appear to be signed by an "MD" (Doc. 28-1, p. 18). On that date, Plummer did not voice any complaints regarding his neck; only the suturing of his lip was discussed at the appointment (*Id.*). On October 7, 2026, Plummer was evaluated by the physician assistant who documented Thornton's complaints of neck pain stemming from his prior gun shot wounds (Doc. 36-1, p. 3). The physician assistant discussed range of motion exercises but also started Thornton on Pamelor (*Id.*). Thornton was directed to follow up within 4-6 weeks to discuss the effectiveness of the medication (*Id.*). Dolce stated that the medication is widely used for chronic nerve pain and the prescription was given for six months (Doc. 36-2, p. 2).

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (2d ed. 1995)). The purpose of such an injunction is "to

minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . " and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## Discussion

Thornton alleges that he is not receiving proper care for his chronic nerve pain and seeks an examination by a specialist. To succeed on an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must demonstrate that he suffered from "an objectively serious medical condition" and that a "state official was deliberately…

indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must show that the defendants' actions were more than negligent, something approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

Here, however, the Court finds that Thornton has not shown a likelihood of success on the merits of his claim because the medical records demonstrate that he is currently receiving care for his neck pain. The medical records show that Thornton was seen by Dr. Devenney in April 2026. At that appointment, x-rays were ordered, he was prescribed Motrin and referred to physical therapy for an evaluation. After the physical therapist determined that he was not fit for physical therapy, he was referred back to the doctor. Although there was initially some confusion in the records as to whether Thornton was referred back to the doctor, the records do reflect that he saw a medical doctor on June 23, 2026 (Doc. 28-1, p. 18).[2] It appears, however, that the more pressing issue at that appointment was the fact Thornton had sutured his own lip with a bed sheet after falling from his bunk (*Id.*). Thronton was eventually referred back to the doctor for his neck pain and has now been evaluated by a physician assistant and prescribed Pamelor (Doc. 36-2, p. 2). The records make clear that Thornton is being seen for his condition, and the doctors are working to determine the best course of treatment for Thornton. He is to follow up with doctors in 4-6 weeks to determine if the prescribed medication is helping with his nerve pain. Although Thornton may want

[2] Although Plummer initially indicated that Thornton was seen on the nurse sick call line on June 23, Connie Dolce clarified that he was actually seen by Dr. Devenney (Doc. 36-2, p. 2). The medical records support this fact as the signature on June 23, 2026, indicates it was signed by a "MD" (medical doctor) (Doc. 28-1, p. 18).

Neurontin or a specialist referral, he "is not entitled to demand specific care." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quoting *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011)). He is clearly receiving nerve pain medication and being further evaluated. Thus, there is no evidence of continuing deliberate indifference that would justify injunctive relief at this time.

## CONCLUSION

For the reasons stated above, Thornton's motion for expedited preliminary injunction hearing (Doc. 5) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: October 30, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**